UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05cv-111-R

GREGG EHLMAN and
TRINA EHLMAN,                                                                                        PLAINTIFFS

v.

FIRST MARINE TRANSPORTATION
CORPORATION, INC.                                                                                     DEFENDANT

## MEMORANDUM OPINION

This matter comes before the Court on the Defendant First Marine Transportation Corporation, Inc's ("FMTC") motion for summary judgment (Dockets #91). The Plaintiffs, Gregg and Trina Ehlman ("Ehlmans") have responded (Docket #121), and the Defendant has replied to that response (Docket #122). This matter is now ripe for adjudication. For the following reasons, the Defendant's motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This matter involves personal injury claims from an accident that took place on November 13, 2003, when the Plaintiff, Gregg Ehlman ("Ehlman"), fell through a manhole located on the vessel "M/V PRETTY PAIGE," which was moored at the banks of the Tennessee River on the property of the Defendant and custodian of the vessel, FMTC. Ehlman claims to have permanently injured his leg after the fall, which required him to receive vascular surgery. The wife of the Plaintiff, Trina Ehlman ("Mrs. Ehlman") has joined this claim under a theory of loss of consortium.

On June 20, 2003, per Court order by Senior Judge Edward Johnstone, United States Marshals seized the vessel M/V PRETTY PAIGE, and placed it under the care of FMTC as a substitute custodian. The ship was to be sold at auction following the seizure. Ehlman became

aware of the sale of the vessel after reading a notice about it in a waterway trade journal. On November 11, 2003, Ehlman, a former towboat pilot and captain, went to the FMTC facility to examine the vessel for a potential purchase by his son. Before boarding the vessel on that day, Ehlman had to sign a Hold Harmless Agreement and Waiver("Agreement").

Two (2) days later on November 13, 2003, Ehlman accompanied his son and his son's friend to the vessel, but on that day Ehlman did not sign an Agreement. Ehlman fell into the manhole on that day, injuring his leg. At the time of the accident, FMTC was the legal custodian of the vessel.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Defendant contends that it is entitled to summary judgment because Ehlman signed the Agreement, and therefore, the Plaintiffs' claim against FMTC in its capacity as a substitute custodian is precluded. In addition, the Defendant argues that as a substitute custodian FMTC owes no duty to Ehlman, and therefore, the Plaintiffs' case should fail as a matter of law. Lastly, the Defendant argues that Mrs. Ehlman cannot assert a loss of consortium claim under maritime law. In their response, the Plaintiffs challenge both the contentions by the Defendant as well as the choice of law applied by the Defendant in its motion, arguing that Kentucky negligence law, not general maritime law, applies in this matter. The Court must first determine what law applies. After that determination, the Court will then determine: whether the Agreement signed by the Defendant precludes the Plaintiffs' claims against FMTC; whether the Defendant owes a duty to the Plaintiffs as a legal custodian; and whether the loss of consortium claim fails under maritime law.

### 1. Choice of Law

In *Kermarec v. Compagnie Generale Transatalantique*, the United States Supreme Court held that in a negligence action brought by a guest aboard a vessel who was not a crew member, admiralty law applied. *Kermarec v. Compagnie Generale Transatalantique*, 358 U.S. 625, 628 (1959). The Court in *Kermarec* went on to note that even if the "action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties." *Kermarec* at 628. Ultimately, the Court determined that the district court was in error in ruling that the governing law of the case was New York law rather than maritime law. *Id.* at 631-32.

The Sixth Circuit Court of Appeals has also adopted this principle. In *Barker v. Dornfeld*, the Court held that "[b]ecause plaintiff's accident occurred in navigable waters, it is governed by federal maritime law, rather than state law." *Barker v. Dornfeld*, 921 F.2d 276, *2 (6th Cir. 1990) (as applied to a guest passenger on a boat); *see National Enters., Inc. v. Smith,* 114 F.3d 561, 565 (6th Cir.1997) ("When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it."); *see also Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 73 (6th Cir. 1990). Here, the accident took place on a vessel that was moored on the Tennessee River; a navigable United States waterway. Accordingly, general maritime law, not Kentucky law, governs the instant matter.

### 2. The Effect of the Hold Harmless Agreement & Waiver

The Defendant contends that the Agreement precludes the Plaintiffs' negligence claim against FMTC. The Defendant asserts that the Agreement not only is valid, but also that its language absolves FMTC in its capacity as a substitute custodian from any liability in this

matter. In their response, the Plaintiffs contend the Agreement is not valid and not favored under federal law. In addition, the Plaintiffs assert that the burden is on the Defendant to prove the validity of the Agreement, and that FMTC has not met that burden.

In pertinent part, the Agreement states:

> The undersigned, "Gregg Ehlman," in order to obtain permission to board the vessel(s) listed below for the purpose of visiting, inspecting, surveying or appraising said vessel(s)...3. *[t]he undersigned hereby waives and surrenders all claims and actions for injury or damage to person or property that I may have against the U.S. Marshal, his keeper, the United States of America, **and the substitute custodian**, arising out of my boarding of the vessel whether actions of activities of the the U.S. Marshal, his keeper, the United States of America, **and the substitute custodian** are negligent or not, and further acknowledge and understand that the aforesaid parties make no warranties of any nature, expressed, or implied, in relation to my boarding the vessel*, and...[t]he undersigned acknowledges and understands that the intent of this agreement and waiver is to cover all of my actions and activities while proceeding to, while aboard, and while departing the vessel(s) as well as any other times and places which lead to an action or claim against the U.S. Marshal, his keeper, the United States of America, and the substitute custodian. (emphasis added).

In general, the US Marshal's Service does not allow visitors onto a seized vessel unless the Court enters an order allowing visitors to board. Here, the Court entered an order permitting visitors on the M/V PRETTY PAIGE so long as the visitors signed the Agreement. The order, dated August 14, 2003, also stated that visitors would have to sign the Agreement so that "the U.S. Marshal, his keeper, the United States of America, and the applicable *Substitute Custodian* are to enjoy all indemnification and are to be held harmless as set forth in said Hold Harmless Agreement and Waiver, whether the same is executed or not."(emphasis added).

In the instant matter, it is undisputed that FMTC is the substitute custodian for purposes of the Agreement. Based on the plain language of the Agreement, it absolves FMTC from liability because the language of the Agreement precludes negligence claims, which would include the injuries incurred by Ehlman while aboard the M/V PRETTY PAIGE. Here, Ehlman

signed the Agreement on November 11, 2003, and the injury took place on November 13, 2003. In his deposition, Ehlman indicated that he understood the terms and conditions from the form he had signed on November 11 were still in effect two (2) days later when he boarded the vessel once again on November 13.  As such, FMTC, as the legal custodian, is indemnified because the language of the Agreement is unambiguous and clearly states that FMTC, as the substitute custodian, shall be absolved from liability, including negligence.  Accordingly, the Agreement is both valid and effective for purposes of precluding the negligence claim brought by the Ehlmans against the Defendant.

Courts from other jurisdictions that have examined the validity of waivers and/or releases signed by non-seaman prior to boarding a ship, vessel, or barge have held that under federal maritime law such releases are binding, and therefore, preclude claims by an injured party against an alleged negligent party.  In *Shutz v. Florida Keys Dive Center, Inc.*, the Eleventh Circuit Court of Appeals, in looking at a release signed by a scuba diver before he suffered a fatal injury during a diving accident, in which the release absolved the dive operators from liability, held that the release was valid under federal maritime law. *Shutz v. Florida Keys Dive Center, Inc.*, 224 F.3d 1269, 1272-73 (11th Cir. 2000).  The Court in *Shutz* reasoned that because the dive center in that matter was not a common carrier, common carrier liability did not extend to the release signed by the diver. *Id.* at 1273.

Similarly, in *Olivelli v. Sappo Corp., Inc.*, the United States District Court for the District of Puerto Rico, in examining a wrongful death claim brought against a dive instructor arising from a scuba diving accident, applied federal maritime law in holding that a liability release signed by the diver was valid, and the release precluded the negligence suit against the

6

defendant. *Olivelli v. Sappo Corp., Inc.*, 225 F.Supp.2d 109, 118-120 (D. Puerto Rico 2002).  In reaching this determination, the Court noted that the plaintiff "accepted responsibility for the consequences and had the particular knowledge of the specific and precise risk (embolism) which caused her death." *Id.* at 118-19.  Here, like the case in *Olivelli*, Ehlman was familiar with the Agreement form that he signed, as he stated in his deposition that he had signed similar release forms before November 2003, and on that particular occasion he had read through the Agreement.  In addition, the Court in *Olivelli* noted that the release was valid because it was explicit as to what charges and parties would be released, in that matter a claim for negligence. *Id.* at 118.  In the instant matter, similar to *Olivelli*, the Agreement specifies not only that the substitute custodian (FMTC) would be released from liability, but also that the claims in which FMTC would be released, which included negligence.

Accordingly, the Agreement signed by Ehlman in this matter is both valid and unambiguous, and therefore, precludes the negligence claim against FMTC. *See also Sander v. Alexander Richardson Investments*, 334 F.3d 712, 714-717 (8th Cir. 2003) (holding that an exculpatory clause contained in contract between owners of a marina dock and lessees, releasing marina from "any and all liability" for damages to property  was sufficiently unambiguous to release marina from liability stemming from its own negligence); *Murley ex rel. Estate of Murley v. Deep Explorers, Inc.*, 281 F.Supp.2d 580, 589-90 (E.D. N.Y. 2003) (holding that under federal maritime law, a waiver that released a scuba company of liability for negligent acts was valid).

### 3. Legal Duty Owed to Ehlman

Assuming that the Agreement did not preclude the negligence claim against FMTC, FMTC would owe the Plaintiffs a legal duty under maritime law.  The Defendant argues that as a

7

substitute custodian following a seizure by U.S. Marshals, it owes no duty to the Plaintiffs because its duty only extended to the protection of the vessel. In support of this assertion FMTC cites the case of *Scotiabank de Puerto Rico v. M/V ATUTI*, 326 F.Supp.2d 282, 284 (D. Puerto Rico 2004)("*Scotiabank*"). However, in *Scotiabank*, though the Court did recognize under the circumstances of the case that the duty of care of the custodian only extended to property within its custody, the matter did not address a negligence claim brought by a guest for an injury he/she sustained while on board the vessel. *Id.* at 285. The parties in that matter alleged that the property itself lost value because the custodians had allowed both damage to occur to the property and a theft of an engine motor. *Id.* The Court noted that it had ordered the custodian to pay for the stolen property, but did not find the custodian negligent. *Id.*

Here, in contrast to *Scotiabank*, the injury did not involve damage to the property, but instead dealt with an injury sustained by a guest upon the vessel while it was in custody of the Defendant. General maritime law imposes duties on owners and/or those in control of a vessel to avoid unseaworthiness and negligence upon vessels in navigable waters. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813 (2001). As such, the Court cannot hold that the determination in *Scotiabank* would preclude a duty of care owed by the custodian to all guests who boarded the vessel. Accordingly, the Court finds that FMTC's status as a substitute custodian does not preclude its legal duty to the Plaintiffs.

### 4. Loss of Consortium Claim of Mrs. Trina Ehlman

The Defendant asserts that because the negligence claim of the Defendant fails as a matter of law, the loss of consortium claim, as a derivative claim, also fails as a matter of law. In

addition, the Defendant contends that general maritime law precludes the loss of consortium claim by Mrs. Ehlman. While the Court concurs with the Defendant's argument concerning the loss of the consortium claim failing as a matter of law because Ehlman's claim is precluded by the Agreement, the Court does not concur with the Defendant's erroneous assertion that general maritime law precludes loss of consortium claims. *See Tompkin v. Phillip Morris USA Inc.*, 362 F.3d 882, 887 (6th Cir. 2004). In the United States Supreme Court case of *American Export Lines, Inc. v. Alvez*, the Court explicitly held that "general maritime law authorizes the wife of a harbor worker injured nonfatally (sic) aboard a vessel in state territorial waters to maintain an action for damages for the loss of her husband's society." *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 276 (1980). Accordingly, while Mrs. Ehlman's loss of consortium claim fails as a matter of law because Ehlman's claim is barred by the Agreement, general maritime law does not preclude all loss of consortium claims.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. The choice of law in this matter is federal maritime law. The Plaintiffs' claim against the Defendant for negligence under federal maritime law fails as a matter of law because the Agreement signed by Ehlman releases FMTC from liability in this matter. In addition, as a derivative claim, Mrs. Ehlman's loss of consortium claim fails as a matter of law. However, FMTC's status as a substitute custodian does not mean that it owes no legal duty to the Plaintiffs, and general maritime law does not preclude all loss of consortium claims. Accordingly, the claims against FMTC are **DISMISSED** as a matter of law.

An appropriate order shall issue.