UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05cv-111-R

GREGG EHLMAN and
TRINA EHLMAN,                                                          PLAINTIFFS

v.

ACME TOWING, INC., et. al.,                                           DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Old National Bank ("ONB"),

Acme Towing, Inc. ("Acme"), and Northstar Navigation, Inc. ("Northstar Navigation") motions

for summary judgment (Dockets #97, #98, and #99, respectively).  The Plaintiffs, Gregg and

Trina Ehlman ("Ehlmans") have responded (Docket #120), and the Defendants have replied to

that response (Dockets #124, #125, and #126).  This matter is now ripe for adjudication.  For the

following reasons, the Defendants' motions are **GRANTED**.

## BACKGROUND

This matter involves personal injury claims from an accident that took place on

November 13, 2003, when the Plaintiff, Gregg Ehlman ("Ehlman"), fell through a manhole

located on the vessel "M/V PRETTY PAIGE," which was moored at the banks of the Tennessee

River on the property of the Co-Defendant and custodian of the vessel, First Marine

Transportation Corp., Inc. ("FMTC").  Ehlman claims to have permanently injured his leg after

the fall, which required him to receive vascular surgery.  The wife of the Plaintiff, Trina Ehlman

("Mrs. Ehlman") has joined this claim under a theory of loss of consortium.

On June 20, 2003, per Court order by Senior Judge Edward Johnstone, United States

Marshals seized the vessel M/V PRETTY PAIGE, and placed it under the care of FMTC as a

substitute custodian.  The ship was to be sold at auction following the seizure.  Ehlman became aware of the sale of the vessel after reading a notice about it in a waterway trade journal.  On November 11, 2003, Ehlman, a former towboat pilot and captain, went to the FMTC facility to examine the vessel for a potential purchase by his son.  Before boarding the vessel on that day, Ehlman had to sign a Hold Harmless Agreement and Waiver ("Agreement").

Two (2) days later on November 13, 2003, Ehlman accompanied his son and his son's friend to the vessel, but on that day Ehlman did not sign an Agreement.  Ehlman fell into the manhole on that day, injuring his leg.  At the time of the accident, Acme was the title owner of the vessel; Northstar Navigation had retained a demise charter agreement over the vessel before the accident took place; and ONB was the preferred mortgage holder of the vessel.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case."  *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of the evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)."  *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Defendants' contend that they are entitled to summary judgment because they did not owe a duty to Ehlman, and even if they did owe a duty, they allege that the Plaintiffs have not demonstrated that they breached their duty.  In their response, the Plaintiffs challenge both the contentions by the Defendants as well as the choice of law applied by the Defendants in their motions, arguing that Kentucky negligence law, not general maritime law, applies in this matter. The Court must first determine what law applies.  After that determination, the Court will then determine whether the Defendants owed a duty to the Plaintiffs, and if so, whether an issue of material fact exists concerning whether each Defendant breached their duty.

### 1. Choice of Law

In *Kermarec v. Compagnie Generale Transatalantique*, the United States Supreme Court

held that in a negligence action brought by a guest aboard a vessel who was not a crew member, admiralty law applied. *Kermarec v. Compagnie Generale Transatalantique*, 358 U.S. 625, 628 (1959). The Court in *Kermarec* went on to note that even if the "action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties." *Kermarec* at 628. Ultimately, the Court determined that the district court was in error in ruling that the governing law of the case was New York law rather than maritime law. *Id.* at 631-32.

The Sixth Circuit Court of Appeals has also adopted this principle. In *Barker v. Dornfeld*, the Court held that "[b]ecause plaintiff's accident occurred in navigable waters, it is governed by federal maritime law, rather than state law." *Barker v. Dornfeld*, 921 F.2d 276, *2 (6th Cir. 1990) (as applied to a guest passenger on a boat); *see National Enters., Inc. v. Smith*, 114 F.3d 561, 565 (6th Cir.1997) ("When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it."); *see also Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 73 (6th Cir. 1990). Here, the accident took place on a vessel that was moored on the Tennessee River; a navigable United States waterway. Accordingly, general maritime law, not Kentucky law, governs the instant matter.[1]

## 2. Negligence Claims Against the Defendants under Maritime Law

In order to establish a negligence cause of action in admiralty, the Plaintiff must prove the following elements: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty of care; 3) a causal connection between the offending conduct and the

---

[1]The Court notes that in their response the Plaintiffs have asserted arguments under Kentucky state law, including additional theories of recovery against the Defendants. Because the choice of law in this matter is maritime and not Kentucky law, the Court does not need to address these claims because they fail as a matter of law.

resulting injury, otherwise known as "proximate cause;" and 4) actual loss, injury or damage suffered by the plaintiff. *Pearce v. U.S.*, 261 F.3d 643, 647-48 (6th Cir. 2001). General maritime law imposes duties to avoid unseaworthiness and negligence upon boats and vessels in navigable waters. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813 (2001). "The general principles of admiralty law require that an owner exercise such care as is reasonable under the circumstances." *Anderson v. Whittaker Corp.*, 894 F.2d 804, 815 (6th Cir.1990). Here, the Court must determine whether or not the Defendants owed a duty of care to the Plaintiffs, and if so, whether an issue of material fact exists as to whether or not the Defendants breached that duty of care. The Court will address each Defendant individually.

### *Acme Towing, Inc.*

At the time of the accident and prior to the seizure, Acme was the title owner of the M/V PRETTY PAIGE. Acme contends that even as the title owner, under general maritime law, an owner without possession or control over a vessel does not become liable under a claim for negligence unless the negligent condition pre-existed the transfer of such control. Acme cites the Fourth Circuit Court of Appeals case of *Kerr-McGee v. Law* in support its argument. *Kerr-McGee Corp. v. Law*, 479 F.2d 61, 63 (4th Cir. 1973).

In *Kerr-McGee*, the Court emphasized that because the owner of the vessel had entered into a demise charter, he relinquished all possession and control of the vessel to the charterer. *Id.* In addressing a vessel owner's responsibility after entering a demise charter, the Court held that "[s]ince he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership. Conversely, the demise charterer becomes subject to the duties and responsibilities of ownership." *Id.* The Court also noted that

5

the title owner of the vessel in that matter did not participate in the operation and the maintenance of the barge. *Id.* Ultimately, the Court concluded that these factors, taken collectively, did not require a duty to maintain the vessel on the part of the title owner. *Id.*; *see also Dant & Russell, Inc. v. Dillingham Tug & Barge Corp.*, 895 F.2d 507, 510 (9th Cir. 1989)(holding that owner is absolved of liability under a demise charter for unseaworthiness claim for all unseaworthy conditions that arose after the owner entered into the demise charter); *Tidewater Barge Lines, Inc. v. The Port of Lewiston, et. al.*, 2005 WL 3992463, *8-*9 (D. Or. 2005)(holding that a demise charter insulates an owner from liability to the charterer and third parties for conditions of unseaworthiness known to the charterer prior to the charter and for conditions of unseaworthiness arising after the charter, reasoning that "an owner should not be punished for conditions of unseaworthiness knowingly accepted by the charterer or arising when the owner is not in control and possession of the vessel.").

In the instant matter, similar to *Kerr-McGee*, Acme, the title owner of the vessel, was not participating in the control, operation and the maintenance of the vessel for up to five (5) months before the accident. From June 20, 2003 through November 13, 2003, FMTC was the custodian of the vessel for all purposes indicated *supra*. In addition, a demise charter between Acme and Northstar Navigation existed at the time of seizure. Acme states that Defendants Northstar Navigation and Northstar Marine, Inc. ("Northstar Marine") chartered the vessel and that Acme did not operate it. Because a demise charter between Acme and Northstar Navigation existed at the time of seizure and because Acme did not control, maintain or operate the vessel on the day of the accident, Acme did not owe a duty of care to the Plaintiffs. *See Huss v. King Company, Inc.*, 338 F.3d 647, 652 (6th Cir. 2003)(in recognizing *Kerr-McGee*, the Court stated that "the

6

owner of a vessel under a demise (or bareboat) charter is liable only for unseaworthiness that pre-existed the charter.").  This finding is consistent with the United States Supreme Court holding in *West v. United States*, where the Court held that a shipowner who is not in control of a vessel at the time of the injury cannot be held liable for negligence and unseaworthiness. *West v. United States*, 361 U.S.  118, 123-24 (1959).

In *West*, the Court reviewed a claim of a ship repairman who brought a negligence action against the owner of the vessel while the vessel was not in control and possession of the owner. *Id.* at 118-19.  In emphasizing the fact that the owner did not have control over the vessel or the power to supervise the vessel while it was being repaired, the Court held that it was "manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or repairs." *Id.* at 123.  Ultimately, the Court determined that the owner was not liable under a negligence theory because he did not have control of the vessel at the time of the injury and the plaintiff did not offer evidence to show a latent defect in the vessel that the owner knew or should have known about. *Id.* at 124; *see Union Carbide Corp. v. Goett*, 278 F.2d 319, 322 (4th Cir. 1960)(holding that under maritime law, owner of a barge was not negligent for taking barge in for repairs without mounting certain safety equipment on barge beforehand because the owner was not in control of the vessel at the time of the injury); *Johnson v. Oil Transport Co.*, 440 F.2d 109, 110-111 (5th Cir. 1971)(holding that district court correctly dismissed a negligence claim under maritime law against the owner of vessel, where, even though the vessel was unsafe, the owner never went aborad, worked on or touched the vessel, and the vessel was not in his possession when the injury took place); *McDonald v. U.S.*, 321 F.2d 437, 440-41 (3d Cir. 1963)(holding that "the test of the shipowner's responsibility is possession

and control... [w]here, as here, possession and control of the vessel are relinquished to an independent contractor, the shipowner owes no duty to the [plaintiff].").

Here, similar to *West*, Acme did not have control or possession of the vessel when the injury took place.  Even prior to the seizure of the vessel by the Government, Northstar Navigation and/or Northstar Marine, not Acme, had control and possession of the M/V PRETTY PAIGE.  The Plaintiffs have not offered any evidence supporting that the fault in the manhole cover, if any, was a latent defect that Acme should have known or knew about, and even if they did, Northstar Navigation and/or Northstar Marine, not Acme, was the owner for purposes of liability prior to the seizure; this indicates that the charterer, Northstar Navigation and/or Northstar Marine, not the owner, Acme, had assumed all legal liabilities prior to the seizure by the Government.  As in *West*, in would be "manifestly unfair" to hold that Acme had a duty to Ehlman when he had neither control nor possession of the vessel prior to and directly after the seizure.  Accordingly, the Court finds that Acme did not owe a duty of care to the Plaintiffs under maritime law.

### *Northstar Navigation, Inc.*

Prior to the seizure of the vessel, Northstar Navigation had operated the M/V PRETTY PAIGE pursuant to a demise charter agreement with Acme.  In citing *Kerr-McGee*, the Sixth Circuit Court of Appeals has held that "'when the owner of a vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership.'" *Huss*, 338 F.3d at 652 (*citing Kerr-McGee*, 479 F.2d at 63). Northstar Navigation argues that under a demise charter, the charterer remains liable to third

parties only so long as the charter remains in effect, and therefore, asserts that upon the seizure by the Government the demise charter ended as well as any duty to the Plaintiffs.

The Defendant cites the Fifth Circuit Court of Appeals case of *Walker v. Braus* in support of its argument that once a charter ends a charterer is no longer liable to third parties. *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993). However, in *Walker*, the Court did not explicitly hold what Northstar Navigation contends, but instead held that "[b]ecause the charter's personnel operate and man the vessel during a demise charter, the charterer has liability *for any and all casualties resulting from such operation*." *Id.* at 81 (emphasis added).

In addition, Northstar Navigation cites the First Circuit Court of Appeals case of *Ramos v. Beauregard, Inc.* in support of its argument. *Ramos v. Beauregard, Inc.*, 423 F.2d 916, 917-18 (1st Cir. 1970). However, *Ramos* involved a claim against a *former shipowner*, not a claim against a *former charterer*, which is dispositive because prior to the seizure by the Government of the vessel, Northstar Navigation operated and controlled the vessel for purposes of liability under maritime law. *Id.*; *see Kerr-McGee* at 63.

Here, at the time of the seizure, a demise charter existed between Northstar Navigation as the charterer, and Acme as the titled owner of the vessel. As such, for liability purposes under maritime law, at the time of the seizure Northstar Navigation was the owner of the vessel because it controlled and had possession of the vessel. However, once the Government seized the vessel, Northstar Navigation was no longer the owner for liability purposes under maritime law because it no longer had control or possession of the vessel. In essence, the demise charter that existed between Northstar Navigation and Acme extinguished at the time of the seizure because what made Northstar Navigation the owner under a demise charter was that it had

9

control and possession of the vessel.  Therefore, the demise charter was not in place at the time
of the accident on November 13, 2003.  Once Northstar Navigation ceased controlling and
possessing the M/V PRETTY PAIGE, it no longer was the owner of the vessel for purposes of
legal liability under maritime law.  Accordingly, Northstar Navigation did not owe a duty to the
Plaintiffs at the time of the accident.

       Similar to *West*, Northstar Navigation did not have control or possession of the vessel
when the injury took place. *See West* at 123-24.  In addition, the Plaintiffs have not offered any
evidence supporting that the fault in the manhole cover, if any, was a latent defect that Northstar
Navigation should have known or knew about prior to the accident.  Therefore, the Court finds
that Acme did not have a duty of care to the Plaintiffs under maritime law at the time of the
accident.

### *Old National Bank*

       Both prior to the seizure by the Government and the day of the accident, ONB held a
preferred ship mortgage against the M/V PRETTY PAGE, and as such, acted as a creditor in this
matter.  Courts have held that a "creditor, to be held liable [under maritime law], must exercise
exclusive actual control over the vessel's operations. That is, either he or his agent must be in
charge of the myriad details of operating the vessel, such as engaging the master, hiring the
crew, and furnishing the fuel, food and supplies." *Stephenson v. Star-Kist Caribe, Inc*., 598 F.2d
676, 681 (1st Cir. 1979); *see Moe v. Key Bank of Washington*, 2000 WL 33180202, *3 (W.D.
Wash. 2000).  In both *Stephenson* and *Moe*, the Courts determined that the creditors in those
matters were not owners *pro hac vice* because they had not exercised control over the vessel.  In
*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A*, the Second Circuit Court of Appeals found

10

that the defendant was more than a mere creditor in that matter and could be liable under

maritime law when the creditor:

> had signed the checks for Rascator's charter hire payments to Sanko, had played an
> active role in making the cargo booking arrangements for the OGDEN FRASER, had
> caused deviations in the ship's scheduled route, and had visited the ship; that it was
> Galin who later refused to agree to an extension of Rascator's letter of credit securing
> the sub-time charter from Sanko and caused Rascator to refuse to make charter hire
> payments to Sanko.

*Dow Chemical Pacific Ltd. v. Rascator Maritime S.A*, 782 F.2d 329, 343 (2nd Cir. 1986)("*Dow*

*Chemical*").  As such, the Court must determine whether or not ONB exercised control over the

vessel.

In the instant matter, the Plaintiffs contend that ONB was responsible for arranging for

FMTC be the custodian in this matter and that ONB paid FMTC's fees.  However, in comparison

to creditor's actions in *Dow Chemical* and the requirements listed by the Court in *Stephenson*,

the actions of ONB in this matter do not make it an owner *pro hac vice* for purposes of this

litigation.  ONB acted in its capacity as a creditor, and unlike the defendant in *Dow Chemical*,

ONB did not assume the role of an owner before or after the seizure in June 2003.  As such,

ONB's relationship to the M/V PRETTY PAGE was only as a preferred mortgage holder and not

as an owner.  Accordingly, the Court finds that ONB did not owe a duty of care to the Plaintiffs

in this matter.

## CONCLUSION

For the foregoing reasons, the Defendants' motions are **GRANTED**.  The choice of law

in this matter is general maritime law.  The Court finds that Defendants Acme Towing, Inc,

Northstar Navigation and Old National Bank did not owe a duty of care to the Plaintiffs at the

time of the accident.  Accordingly, the claims against the Defendants are **DISMISSED** as a

11

matter of law.

An appropriate order shall issue.