UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05cv-111-R

GREGG EHLMAN and
TRINA EHLMAN,                                                                                     PLAINTIFFS

v.

NORTHSTAR MARINE, LLC
DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendant Northstar Marine, LLC's ("Northstar Marine") motion for summary judgment (Dockets #123). The Plaintiffs, Gregg and Trina Ehlman ("Ehlmans") have responded (Docket #127), and the Defendant has replied to that response (Docket #128). This matter is now ripe for adjudication. For the following reasons, the Defendant's motion is **GRANTED**.

**BACKGROUND**

This matter involves personal injury claims from an accident that took place on November 13, 2003, when the Plaintiff, Gregg Ehlman ("Ehlman"), fell through a manhole located on the vessel "M/V PRETTY PAIGE," which was moored at the banks of the Tennessee River on the property of the Co-Defendant and custodian of the vessel, First Marine Transportation Corp., Inc. ("FMTC"). Ehlman claims to have permanently injured his leg after the fall, which required him to receive vascular surgery. The wife of the Plaintiff, Trina Ehlman ("Mrs. Ehlman") has joined this claim under a theory of loss of consortium.

On June 20, 2003, per Court order by Senior Judge Edward Johnstone, United States Marshals seized the vessel M/V PRETTY PAIGE, and placed it under the care of FMTC as a substitute custodian. The ship was to be sold at auction following the seizure. Ehlman became

aware of the sale of the vessel after reading a notice about it in a waterway trade journal. On November 11, 2003, Ehlman, a former towboat pilot and captain, went to the FMTC facility to examine the vessel for a potential purchase by his son. Before boarding the vessel on that day, Ehlman had to sign a Hold Harmless Agreement and Waiver("Agreement").

Two (2) days later on November 13, 2003, Ehlman accompanied his son and his son's friend to the vessel, but on that day Ehlman did not sign an Agreement. Ehlman fell into the manhole on that day, injuring his leg. Northstar Marine had retained a demise charter agreement over the vessel with Co-Defendant Acme Towing, Inc. ("Acme"), the titled owner of the vessel, before the vessel was seized by the Government in June 2003.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of

fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Defendant contends that it is entitled to summary judgment because it did not owe a duty to Ehlman arguing that it never had possession, custody or control of the vessel, and even if it did owe a duty, they allege that the Plaintiffs have not demonstrated that it breached its duty. In their response, the Plaintiffs challenge both the contentions by the Defendant as well as the choice of law applied by the Defendant in its motion, arguing that Kentucky negligence law, not general maritime law, applies in this matter. The Court must first determine what law applies. After that determination, the Court will then determine whether the Defendant owed a duty to the Plaintiffs, and if so, whether an issue of material fact exists concerning whether the Defendant breached its duty.

### 1. Choice of Law

In *Kermarec v. Compagnie Generale Transatalantique*, the United States Supreme Court

held that in a negligence action brought by a guest aboard a vessel who was not a crew member, admiralty law applied. *Kermarec v. Compagnie Generale Transatalantique*, 358 U.S. 625, 628 (1959). The Court in *Kermarec* went on to note that even if the "action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties." *Kermarec* at 628. Ultimately, the Court determined that the district court was in error in ruling that the governing law of the case was New York law rather than maritime law. *Id.* at 631-32.

The Sixth Circuit Court of Appeals has also adopted this principle. In *Barker v. Dornfeld*, the Court held that "[b]ecause plaintiff's accident occurred in navigable waters, it is governed by federal maritime law, rather than state law." *Barker v. Dornfeld*, 921 F.2d 276, *2 (6th Cir. 1990) (as applied to a guest passenger on a boat); *see National Enters., Inc. v. Smith*, 114 F.3d 561, 565 (6th Cir.1997) ("When a district court exercises its admiralty jurisdiction, that court must apply admiralty law, rather than state law, to the case before it."); *see also Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 73 (6th Cir. 1990). Here, the accident took place on a vessel that was moored on the Tennessee River; a navigable United States waterway. Accordingly, general maritime law, not Kentucky law, governs the instant matter.[1]

### 2. Negligence Claim Against the Defendant under Maritime Law

In order to establish a negligence cause of action in admiralty, the Plaintiffs must prove the following elements: 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty of care; 3) a causal connection between the offending conduct and the

---

[1]The Court notes that in their response the Plaintiffs have asserted arguments under Kentucky state law, including claims of *res ipsa loquitor* and other theories of recovery. Because the choice of law in this matter is maritime and not Kentucky law, the Court does not need to address these claims because they fail as a matter of law.

resulting injury, otherwise known as "proximate cause;" and 4) actual loss, injury or damage suffered by the plaintiff. *Pearce v. U.S.*, 261 F.3d 643, 647-48 (6th Cir. 2001).  General maritime law imposes duties to avoid unseaworthiness and negligence upon boats and vessels in navigable waters. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 813 (2001).  "The general principles of admiralty law require that an owner exercise such care as is reasonable under the circumstances." *Anderson v. Whittaker Corp.*, 894 F.2d 804, 815 (6th Cir.1990).  Here, the Court must determine whether or not the Defendant owed a duty of care to the Plaintiffs, and if so, whether an issue of material fact exists as to whether or not the Defendant breached that duty of care.

Prior to the seizure of the vessel, Northstar Marine had operated the M/V PRETTY PAIGE pursuant to a demise charter agreement with Acme.  In citing the Fourth Circuit Court of Appeals case of *Kerr-McGee v. Law*, the Sixth Circuit Court of Appeals has held that "'when the owner of a vessel enters into a demise charter, he surrenders all possession and control of the vessel to the charterer. Since he no longer has the right to control the use of the vessel, he is no longer charged with the duties and liabilities that arise out of its ownership.'" *Huss v. King Co., Inc.*, 338 F.3d 647, 652 (6th Cir. 2003)(*citing Kerr-McGee v. Law*, 479 F.2d 61, 63 (4th Cir. 1973)).  Northstar Marine argues that the Plaintiff has not presented any proof that Northstar Marine ever had possession, custody or control of the M/V PRETTY PAIGE, and therefore, should be absolved of any negligence in this matter because it did not owe a duty to the Plaintiffs.  The Defendant further contends that even if it had possession prior to June 20, 2003, any obligations Northstar Marine had extinguished at the time of the seizure of the vessel.

The United States Supreme Court, in *West v. United States*, held that when a shipowner is

not in control of a vessel at the time of the injury, he cannot be held liable for negligence and unseaworthiness. *West v. United States*, 361 U.S. 118, 123-24 (1959). In *West*, the Court reviewed a claim of a ship repairman who brought a negligence action against the owner of the vessel while the vessel was not in control and possession of the owner. *Id.* at 118-19. In emphasizing the fact that the owner did not have control over the vessel or the power to supervise the vessel while it was being repaired, the Court held that it was "manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or repairs." *Id.* at 123. Ultimately, the Court determined that the owner was not liable under a negligence theory because he did not have control of the vessel at the time of the injury and the plaintiff did not offer evidence to show a latent defect in the vessel that the owner knew or should have known about. *Id.* at 124

  Here, at the time of the seizure, a demise charter existed between Northstar Marine as the charterer, and Acme as the titled owner of the vessel. As such, for liability purposes under maritime law, at the time of the seizure Northstar Marine was the owner of the vessel because it controlled and had possession of the vessel. However, once the Government seized the vessel, Northstar Marine was no longer the owner for liability purposes under maritime law because it no longer had control or possession of the vessel. In essence, the demise charter that existed between Northstar Marine and Acme extinguished at the time of the seizure because what made Northstar Navigation the owner under a demise charter was that it had control and possession of the vessel. *See Kerr-McGee* at 63. Therefore, the demise charter was not in place at the time of the accident on November 13, 2003. Once Northstar Marine ceased controlling and possessing the M/V PRETTY PAIGE, it no longer was the owner of the vessel for purposes of legal liability

under maritime law.  Accordingly, Northstar Marine did not owe a duty to the Plaintiffs at the time of the accident.

Additionally, similar to *West*, Northstar Marine did not have control or possession of the vessel when the injury took place. *See West*, 361 at 123-24.  Further, the Plaintiffs have not offered any evidence supporting that the fault in the manhole cover, if any, was a latent defect that Northstar Marine should have known or knew about prior to the accident.  Therefore, the Court finds that Northstar Marine did not owe a duty of care to the Plaintiffs under maritime law at the time of the accident.

## CONCLUSION

For the foregoing reasons, the Defendant's motion is **GRANTED**.  The choice of law in this matter is general maritime law.  Further, the Court finds that Northstar Marine did not owe a duty of care to the Plaintiffs at the time of the accident.  Accordingly, the claims against the Defendant are **DISMISSED** as a matter of law.

An appropriate order shall issue.